UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| Salman Pervez<br><br>Plaintiff<br><br>v.<br><br>Fair Collections & Outsourcing, Inc.<br><br>Defendant. | Case No. 1:13-CV-1193<br><br>**COMPLAINT FOR DAMAGES UNDER THE FAIR DEBT COLLECTION PRACTICES ACT, THE TELEPHONE CONSUMER PROTECTION ACT AND OTHER EQUITABLE RELIEF**<br><br>**JURY DEMAND ENDORSED HEREIN** |

## PARTIES

1. Plaintiff, Salman Pervez, ("Salman"), is a natural person who resided in, *inter alia*, Westfield, Indiana, at all times relevant to this action.

2. Defendant, Fair Collections & Outsourcing, Inc., ("FCO"), is a Maryland Corporation that maintained its principal place of business in Beltsville, Maryland, at all times relevant to this action.

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as it arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 et seq.

4. Pursuant to 28 U.S.C. §1331, the Court has Federal Question Jurisdiction over Plaintiff's claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq, ("TCPA").

5. Pursuant to 28 U.S.C. §1391(b), venue is proper because a substantial part of the events giving rise to this claim occurred in this judicial district.

## STATEMENT OF FACTS

6. At all times relevant to this action, FCO collected consumer debts.

7. FCO regularly uses instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

8. The principal source of FCO's revenue is debt collection.

9. FCO is a "debt collector" as defined by 15 U.S.C. §1692a(6).

10. As described, *infra*, FCO contacted Salman to collect a debt that was incurred primarily for personal, family, or household purposes.

11. This alleged obligation is a "debt" as defined by 15 U.S.C. §1692a(5).

12. Salman is a "consumer" as defined by 15 U.S.C. §1692a(3).

13. On February 1, 2012 Salman entered into a residential lease agreement with Oak Park Place Apartments in Oak Park, Illinois ("Exhibit A").

14. In November 2012, Defendant willingly and knowingly, without express consent, used an automatic telephone dialing system to call Plaintiff's cellular telephone number and left a Message in Plaintiff's voicemail.

15. Throughout and after November 2012, Defendant willingly and knowingly used an automatic telephone dialing system to call Plaintiff's cellular telephone number, on multiple occasions, each time without express consent, and left messages on Plaintiff's voicemail.

16. On or around November 18, 2012, Salman received a written communication from FCO in connection with the collection of a debt ("Exhibit B").

17. In that letter, FCO demanded payment of money that, by law, it was not authorized to collect in the underlying lease agreement.

18. The lease agreement, provides a Buy-Out Procedure that states:

"You may buy out of the Lease Contract prior to the end of the lease term and cut off all liability for paying rent for the remainder of the lease term *if all the following occur:*

(a) you give us written notice of buy-out at least <u>30</u> days prior to the new termination date (i.e., your new move-out date), which (*check one*) [x] must be the last day of a month or [ ] may be during a month;

(b) you specify the new termination date in the notice, i.e., the date by which you'll move out;

(c) you are not in default under the Lease Contract on the date you give us the notice of buy-out;

(d) you are not in default under the Lease Contract on the new termination date (move-out date);

(e) you move out on or before the new termination date and do not hold over;

(f) you pay us a buy-out fee (consideration) of <u>$3400</u>;

(g) you pay us the amount of any concessions you received when signing the Lease Contract; and

(h) you comply with any special provisions in paragraph 8 below."("Exhibit A")

19. The Buy-Out Procedure may be exercised at the tenant's option.

20. Salman did not elect to exercise the Buy-Out Procedure, as he had found a sub-lessee to take over his lease.

21. FCO is attempting to collect the buy-out fee of $3400 specified in the lease agreement.

22. FCO had no right to enforce the Buy-Out Procedure or attempt to collect it under the lease agreement.

23. Shortly after Salman received the written communication from FCO, he received another voice message on his personal telephone from FCO, also without express consent.

24. Around the first week of December 2012, Salman contacted FCO by telephone and disputed the debt.

25. During this communication, Salman asked for verification of the debt because he felt he was not responsible for the debt.

26. During this communication, the representative made a remark something substantially similar to the fact that FCO does have lawyers and if FCO needs to get them involved, they would.

27. During this communication, the representative was very rude, raised her voice and belittled Salman.

28. On December 17, 2012, Salman mailed a letter to FCO requesting validation of the debt. ("Exhibit C")

29. On or around April 5, 2013, Salman contacted FCO by telephone inquiring as to why he had not received a validation letter.

30. During this communication, FCO informed Salman a letter had been sent to his attorney.

31. By sending a letter to the lawyer, FCO disclosed the existence of the debt to a third party.

32. Salman told FCO he had retained an attorney for a lease dispute with the landlord not pertaining to the debt.

33. FCO agreed to send a copy of the validation letter to Salman.

34. Having still not received the letter, on or around May 5, 2013, Salman contacted FCO again by telephone inquiring as to why he had not received the validation letter.

35. FCO informed Salman because he was represented by an attorney, they could not communicate with Salman.

36. Salman, again, indicated that the lawyer they had on record as representing him was not his lawyer regarding the debt collection and demanded a copy of the validation letter.

37. On or around May 16, 2013, FCO, despite telling Salman previously they couldn't communicate with him because he was represented by an attorney, telephoned Salman attempting to settle the debt.

38. The amount of the settlement agreement was more than the original debt.

39. On or around June 10, 2013, FCO, despite telling Salman previously they couldn't communicate with him because he was represented by an attorney, mailed Salman a letter attempting to settle the debt ("Exhibit D").

40. The amount of the settlement agreement was more than the original debt.

41. FCO is attempting to collect a debt that has been disputed.

42. FCO is attempting to collect a debt for more than the amount of the debt.

43. Salman requested a validation letter from FCO which he has not received.

44. FCO caused Salman severe emotional distress.

45. FCO attempted to collect a debt from Salman.

46. FCO violated the TCPA

47. FCO violated the FDCPA.

## COUNT ONE

### Violation of the Fair Debt Collection Practices Act

48. Plaintiff incorporates each of the preceding allegations as if specifically stated herein.

49. Defendant violated 15 U.S.C. §1692c(a)(2) by communicating with Plaintiff notwithstanding knowledge that Plaintiff was represented by an attorney with respect to the debt.

## COUNT TWO

### Violation of the Fair Debt Collection Practices Act

50. Plaintiff incorporates each of the preceding allegations as if specifically stated herein.

51. Defendant violated 15 U.S.C. §1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff in connection with the collection of the debt.

## COUNT THREE

### Violation of the Fair Debt Collection Practices Act

52. Plaintiff incorporates each of the preceding allegations as if specifically stated herein.

53. Defendant violated 15 U.S.C. §1692e by using false, deceptive, or misleading representations or means in connection with the collection of the debt.

## COUNT FOUR

### Violation of the Fair Debt Collection Practices Act

54. Plaintiff incorporates each of the preceding allegations as if specifically stated herein.

55. Defendant violated 15 U.S.C. §1692f by using unfair or unconscionable means to collect the debt.

## COUNT FIVE

### Violation of the Fair Debt Collection Practices Act

56. Plaintiff incorporates each of the preceding allegations as if specifically stated herein.

57. Defendant violated 15 U.S.C. §1692g by continuing its efforts to collect the debt without first validating the debt pursuant to Plaintiff's written request.

## COUNT SIX

### Violations of the Telephone Consumer Protection Act

58. Plaintiff incorporates each of the preceding allegations as if specifically stated herein.

59. Defendant knowingly and willfully violated 47 U.S.C. § 227(b)(A)(iii) on multiple occasions by calling Plaintiff on his cellular telephone without express consent.

## JURY DEMAND

60. Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

61. Plaintiff prays for the following relief:

   a. Judgment against Defendant for actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. §1692k.

   b. An order enjoining Defendant from placing further telephone calls to Plaintiff's cellular telephone number pursuant to 47 U.S.C. § 227(b)(3).

   c. Judgment against Defendant for statutory damages pursuant to 47 U.S.C. § 227(b)(3).

   d. For such other legal and/or equitable relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED,

Hyslip & Taylor, LLC LPA

By:   s/ Jeffrey S. Hyslip

Date: July 25, 2013

Jeffrey S. Hyslip, Esq.
Hyslip & Taylor, LLC LPA
917 W. 18th Street, Suite 200
Chicago, IL  60608
Telephone:  (312) 380-6110
FAX:  (312) 361-3509
E-Mail: jeffrey@lifetimedebtsolutions.com